Good morning and welcome to the Fifth Circuit Court of Appeals. We have experienced and seasoned attorneys here today, so I will keep the introductory remarks brief. Please be aware of our light system. When you get a yellow light, you've got two minutes. Start to conclude. Red light, wrap it up. Rebuttal is for rebuttal only, so don't raise new arguments on rebuttal. Get them all out in the original argument. And we've, of course, read the briefs, but we appreciate record sites where you are focusing on a particular fact. All right, so we will begin by calling case number 17-30383, United States v. Beene. Ms. Merrick. May it please the Court. Opposing counsel. My name is Betty Merrick, and I represent the appellant, Rickey Beene. Mr. Beene's conviction was vacated by this Court in March of 2016, and the matter was remanded for the discrete issue of whether exigent circumstances existed at the time of the warrantless search of Mr. Beene's automobile, which was parked in his own driveway under the automobile exception to the Fourth Amendment's warrant requirement. It is our position that the district court committed clear error when it found that exigent circumstances did, in fact, exist in this case. The Fifth Circuit has already decided that probable cause existed because of the sniff search by Officer Goodes' drug dog. So the issue then becomes whether there were, in fact, the exigent circumstances. The Court discussed the five factors set out in blunt in its ruling and really relied on three of those five factors. And I'll take up each factor as the Court addressed it and then provide my response to that. The first thing that the Court discussed was the degree of urgency which was involved and the amount of time that was necessary to obtain a warrant. The Court found that there was a degree of urgency involved because the officers were in hot pursuit. The trail was hot pursuant to previous cases decided by this circuit. In fact, there are no facts in the record to suggest how long it would have taken to obtain a warrant in this case. And primarily, I believe, the reason for that is that at the time of the hearing, the government was focused upon this being a traffic stop, not upon exigent circumstances. And so the record was never fully fleshed out about how long it would take to get a warrant. The Court talks about the urgency and hot pursuit. It is our position that the hot pursuit ended when Mr. Bean was handcuffed within two minutes of Officer Mills. Officer Mills blocked in Mr. Bean's car in his own driveway and ordered him to—Mr. Bean exited. Officer Mills ordered him to approach Officer Mills. Officer Mills then told him to stop. There was some discussion, but within two minutes, he had placed Mr. Bean on the ground, handcuffed him, and other officers had begun to arrive, and Mr. Bean was— So would you just agree — would you agree overall that it was highly exigent up until a specific point? This is a known drug dealer felon. He's waving a gun. Bystanders are agitated. The wife comes running around the corner. That's all highly exigent. But your — is your argument just that it all stopped prior to the car? Well, first of all, there are no bystanders other than one. I thought there were three — there were some women that said, he's gone that way, he's gone that way. Well, they were in another neighborhood. Right. So he leaves— But my point, it's a highly fluid situation, known drug dealer who has a gun. I would agree with that. So then it seems to me your argument of clear error depends on establishing that prior to the car search, all possible gun users were essentially immobilized. That is correct. Okay. And so at that point, Mr. Bean is handcuffed and placed in the back of the car. The record is confusing about at what point Mrs. Hurd-slash-Bean, Mr. Bean's wife, gets arrested. She's detained almost immediately when she comes around the corner. We've got seven officers on scene. And so some are dealing with her and some are searching the car, and they all have a different opinion about at what point she is immobilized. And that's what it probably all comes down to. But that is—you're correct, and there is no answer for that question based upon the record as we have. But don't you lose—I mean, that's very candid of you. I would have thought you'd say the record pretty much with the police chief establishes that she really couldn't have moved. Well, the police chief does. My problem with that fact—and here again, this record is very confusing. The police chief, who Judge Foote immediately discounts his entire testimony, says he detains her the minute she comes around the corner. So we have that as a beginning point, and then we have another detention point as being some 20 minutes after EMS arrives and treats her for the maybe seizure that she had. So we really don't know— Was the record established that the keys were in the car, or was the car still running? The car—no, the record does not. We don't know where the keys are to the automobile. We do know that the car is unlocked. Okay. So we do have that fact in the record. And I believe all of the officers testify to that, and Ms. Bean testifies to that as well. So our position is that the hot pursuit ends really at that point. And so the urgency ends because Officer Mills and Officer Good, in fact, have a conversation about whether or not they can even enter the car. Officer Mills' testimony is that he doesn't even think he has probable cause to enter the car at that point because all they have is the anonymous tip that Mr. Bean has had the gun. And Officer Good then says, oh, no problem. I'll just run the drug dog around the car to see if there's something in the car. And I raise that as an issue in my first brief. The Fifth Circuit has already decided that issue, so I'll move on. But at that point, they talked about whether or not they could even get in this car. And so the urgency—this is not where the officers are running and they're chasing somebody through an apartment complex and they have to stop the individual. They've already stopped Mr. Bean. They've arrested him for resisting arrest. His wife at some point in this is arrested and placed in the back of the police unit. The second factor that the court relied upon is the reasonable belief that the contraband was about to be removed, which I think goes exactly to your question again as well. The contraband can't be removed. Mr. Bean is in handcuffs. He's in the back of the car. Ms. Bean is detained. There's no one else in the trailer home. We know that from the record because they ultimately search the trailer and there's no one there. We have no evidence that a crowd had gathered, that no one else in the neighborhood even knows that this is going on. In fact, the only evidence we have about people who might live in this rural area is provided by Mrs. Bean when the government asked whether he's trying to establish boundaries and sidewalks and curtilage, but he asked about whether or not people cross her yard and she said no one walks in our neighborhood. It's not a neighborhood. No one walks there. So it's a rural area and there aren't other people who know that this is even going on except Mr. Bean and his wife who've both been immobilized. Also, the car at this point cannot be moved. The record establishes that it is surrounded by a wooden fence on two sides, the right side of the car and the front of the car. The trailer sits on the left side of the car and Officer Mills has parked across the driveway so that the car cannot be moved at that point. There's no evidence, again, that a crowd had gathered. There's no evidence that the mobility of the car is going to cause the contraband to be removed. The third factor is the possibility of the danger to the police officers who might be guarding the site while the search warrant is sought. Here again, there's nobody there except Mrs. Bean, who they've detained, Mr. Bean, who's in the back of the police car, and seven police officers. So it is our position that at that point any one of those officers could have asked for a warrant in order to search the vehicle which was parked on private property. The only officer who said anything about danger in this entire record is Officer Mills, and he says in response to a question about why he ordered Mr. Bean to the ground is that he didn't know if Mr. Bean had the gun on his person because he had exited the automobile. But once he has him on the ground and handcuffs him, he's aware that the gun is not there. So at that point, the gun is in the automobile. Mr. Bean is immobilized. The wife is immobilized. We don't know whether or not the gun is even, in fact, in the car. They suspect that it is but don't know that. So the seven police officers are there, and any one of those officers, including the chief, could have asked for a warrant at that time. The next factor that the judge relied upon, or the judge did not rely upon but the factor discussed in blunt, is the information that possessors of the contraband are aware that police are on their trail. Prior to Mr. Bean pulling in his driveway, he did not have any knowledge that the police were pursuing him. Every police officer was asked and every police officer responded that they had never activated their lights. They had never turned on their sirens. They were simply searching for Mr. Bean as part of their investigation to determine whether or not this tip might even be true. When they reach the driveway, Mr. Bean doesn't scurry into his driveway to beat Officer Mills. It's just fortuitous that he arrives there and turns into his driveway and Officer Mills then blocks him in, gets out of his car, and asks Mr. Bean to step to the rear. So Mr. Bean doesn't know that they're looking for him. If the gun, in fact, is on the premises, it has to either be in his car or on his person. There is no evidence as to whether or not he could have disposed of the weapon previously when he left the Mill Street apartment. The record is devoid of any evidence to that particular point. And, once again, Mr. Bean was arrested within two minutes after stepping out of his car. The fifth factor is the destructibility of the contraband and knowledge that the efforts of criminals to dispose of this evidence is known to the police officers. Here again, we are back to the fact that Mr. Bean is arrested and cuffed and that no one at that point can destroy anything because there's no one there other than the two individuals. Based upon the lack of facts in the record, we submit that the court committed clear error in its determination that exigent circumstances existed and ask this court to vacate Mr. Bean's conviction based upon the clear error committed by the court. Thank you. Thank you. And you save time for rebuttal. Yes, ma'am. All right. Ms. Ralston? Good morning, Your Honors. May it please the court. Sonia Ralston for the United States. The district court summarized its holding on page 355 of the record as, quote, there was urgency with prompt action and hot pursuit by law enforcement by the potential for removal and or destruction of evidence, by the potential for danger because of the likely presence of a firearm, and by Bean's use of the vehicle to flee the scene of the suspected crime, end quote. The question before this court is whether those findings are clearly erroneous. They're not. My opposing counsel's argument seems to rest on the premise that because the car could be seized, that then the officers could have secured the vehicle, left the scene, got a warrant, and all would be okay. But as the Supreme Court held in Chambers v. Maroney and this court echoed in the Reed case, there's no difference between them. Why did they need to leave the scene to get a warrant? We don't know that either, do we? I mean, most places now they call in the information and a warrant gets issued. Now, maybe, I don't know if they have to physically possess it. There's no evidence in the record one way or the other about how to secure a warrant in this case. The point remains that there would be some type of delay, during which time the vehicle would be seized while they're waiting for the warrant, and there's no Fourth Amendment difference between a warrantless seizure and a warrantless search of an automobile. The Supreme Court said that in Chambers. This court said that in Reed. And so it doesn't matter. If they could have seized the car, they could search the car. So this concept that they ---- Wait. What's your argument? It's not an exigency argument? Your argument's an inevitability argument? No, no, no, no. I'm saying that her complaint about the exigency is that they had everything under control, so they could have gone to get a warrant and nothing bad would have happened to the car. Yeah. In order for that to be true, the car would have to be seized in the meantime because if you ---- I thought it was undisputed there were officers all around it and the car was blocked by a police car. Which is a seizure. So, therefore, it was seized. Yes. And if the seizure was okay, then the search is okay. There's no Fourth Amendment difference between a seizure and a search of an automobile. Well, I'm not understanding your legal theory. Is your theory here the district court's theory that there were exigent circumstances that justified them finding the gun, or is it some other legal theory? No, Your Honor. It's exactly what the district court found, that there was an exigency ---- Yours is a matter of the timing. You're saying at the time they blocked the car, they seized it under exigent circumstances, and having done so properly, they now can search it. Yes. It's a timing issue. It's not a question of legal theory. Yes. The legal theory is still exigent. The legal ---- Yes. The legal theory is exigency. The point is that anything that would ---- You're responding to the notion that they could have just sat around for hours having blocked the car, and that's okay, because the thing is, if they block the car, that's a seizure. If they unblock the car, the car can be moved while they're waiting for the warrant. Yes. Okay. Anything that dissipates the exigency requires a seizure of the vehicle. What's your case that allows them to do an exigent entry, say, an hour after the exigency existed? This case is just like Carlton and just like Reed, where simultaneous with the arrest of the defendant, where there are other people on the scene who are detained but not arrested. In Reed, the wife was arrested, but in Carlton, there were officers there securing ---- Carlton and Reed, that was a rapist and a bank robber, right? And it was undisputed there were people, either accomplices or others, that had not been apprehended. So if we're going to draw a direct connection between those cases and this one, who is this mystery person that had access to the gun? In Reed, there is no ---- They didn't know at the time that there were accomplices. Mr. Reed accomplished the bank robbery on his own. There was only one person doing the robbery who takes the money with the tracker, gets back in the car. They follow the tracker to his house. The court finds that the officers missed no opportunity to get a warrant. Similarly here, the officers missed no opportunity because by the time they arrived at the house and knew where the car was, they didn't know it was going to be there in advance, like in Coolidge. Actually, the police chief said that the wife was cuffed, correct? So the evidence on that point ---- I'm just asking you, did the police chief say that? Not at that time. No. So if you look at the testimony at pages 480 and at 513 of the record, they say that she was not in custody when the car was searched. They say. I'm asking you, did the police chief say that she was cuffed before the car was searched? Not they, the police chief. I think 513 is the chief. Okay. There's two different officers, and I think 513 is the chief. 352 is the district court's finding on this matter, where the court finds that Heard was not in custody at the time the car was searched. So the court, hearing all the testimony from all the officers, makes a factual finding on that point, and this court is bound by that factual finding unless it's clearly erroneous. Because there's support in the record for that finding at 480 and 513, it can't be clearly erroneous. So the confusion on this helps you. If it's confusing, then we have to go with the fact finding of the district court. That's correct, Your Honor. There's also, she pointed out that, you know, they say later they searched the trailer and there wasn't anybody else in the trailer. But at the time they searched the car, nobody had been inside the trailer. They didn't know that there wasn't someone else inside the trailer. And in Reed and in Carlton, you know, this court does engage in a certain amount of speculation about what might happen in the future about if the officers leave the scene, other people might come, there might be accomplices. In Carlton, the wife or the mother might take the car for innocent purposes or otherwise. So there doesn't have to be certainty that something terrible is going to happen. Is the logic of your position, would it allow if brandished gun by drug felon, he gets home? Under your theory, would they have been able to go into the house without a warrant? I don't think so, Your Honor. Your Honor, the automobile exception in this court's kind of car in the driveway case is applying this exigency. It's not the same type of exigency as would permit a warrantless entry into the house. I don't think in Reed, for example, you know, they don't go into the house until they're invited in. They, you know, Mr. Reed opens the door and he's pulled onto the porch to be arrested. So it's not the same type of imminent destruction. I'll be frank. I mean, this case has had so many difficulties, and it seems to me like a classic case for applying the exclusionary rule. You have acknowledged police misconduct, falsified a consent report. I think I'm right. The drug handler ends up getting – the dog handler ends up getting indicted. And so you've got a huge amount of police misconduct. You've got an immediate ability to call to get a warrant, to get Article III involved. And factually, we can debate about this wife who had to be escorted to the bathroom, and there's seven officers around her and maybe cuffed. Maybe the police chief's lying there too. But this is a very controlled situation. It's hard for me to imagine one more, seven police officers, cars blocked. So if we say yes, what's the rule of law we're saying? That's the problem. What's the rule of law going forward? Whenever you've got a gun brandished, you can pretty much look anywhere, even if you've got seven officers and you've blocked everybody in. And the only person arguably close to the car is the wife. It would be hard – how would you write this rule to not allow police to always look for guns without ever involving the judiciary? There's several responses, Your Honor. The first is a factual one about whether there were seven officers at the moment the car is searched. Okay, good. You're right. Yeah. It's true that eventually there are seven officers on the scene by the time they're dealing with the EMS and the fainting and they search the house. But at the time the car is searched, that all happens before. And I think that one reading of the record is there's only four officers on the scene at that time. Four is a pretty good number. It's still a good number, but this car – in Carlton, the police had the house surrounded. In Reed, there were several police cars and at least three officers present, although probably more for there to be several police cars. So this case is just like those cases. There are enough officers on the scene where everything is secure, where they're doing the search essentially simultaneously with the arrest. The government's theory below was that this was a search incident to arrest, and this court rejected that because they found the crime of arrest to be resisting and not brandishing the firearm. The district court on remand in a footnote kind of quibbles with that, saying that she always believed the crime of arrest to be brandishing the firearm. But that's been settled at this point. The fact is that it was very close in time to the arrest. In Reed, they're searching the car. When the defendant is brought out of the house in handcuffs being arrested, he sees the other officer searching the car right at that moment. So it's just like those cases. So even if the court thinks that the rule ought to change prospectively going forward— No, I'm just asking how do we maintain integrity to the rule where it's danger to the police, hard to see that for me, or danger of destruction of evidence, very hard for me to see. So here, I mean, unless the court wants to say that any time there are enough officers on the scene to secure the vehicle, you have to get a warrant, you know, that flies in the face of this court's holding in Reed and the Supreme Court's holding in Chambers. I mean, so here's the question that I have that gets to the heart of it. If there was no exigent circumstances, and the officers are standing around the car, and Mr. Beam's mother shows up and says, I'm here to take the car, and jumps in, is there any basis for them to stop her? In other words, she can jump in the car and drive off, and if he's blocking her, then that's a seizure. If they move the blocking and unseize it, if you will, then she can drive off. Isn't that the point you're making? Yes, Your Honor. That there's nothing to keep the car there. The fact that you have 100 officers standing there doesn't make a difference unless you're allowed to seize the car. And once you're allowed to seize the car, as you point out, you can search it. That's exactly right. So I guess that's the problem we have here. I did go back and look at your sites. That's what I was doing up here. And one officer, Officer Mills, says that when they did the thing with the car, they were still just talking to Mrs. Hurd. The chief says first that she was arrested at that point, but then he backs off and says, well, I wasn't really right there, Officer Crook was, and Officer Crook would know what's going on. So the chief equivocates a bit. First says yes, consistent with what my fellow panel members have been saying, and then later backs off and says, well, Crook would know better because I was really off in the corner up here. I didn't know what was going on. So that's the evidence on that. So I suppose if it matters whether she was handcuffed at the time of the search, there's inconsistent evidence on that. I think there's – you're right, Your Honor, and thank you for pointing that out. I would also say that I think she wasn't handcuffed because if you follow the timeline with – everybody agrees that the car search happens before the emergency medical personnel show up, and her story about the seizure or the fainting, whatever it is that happens that causes them to call EMS, it doesn't make sense if she's handcuffed when that happens. So I think the timeline only makes sense that she's handcuffed after that incident. So, again, the question is clear error. The district court's finding explicitly finds on page 352 that she was not in custody, and its conclusion on page 355 that there are all of these factors – we're talking about narcotics, we're talking about a gun – that those factors aren't present in cases like Coolidge where the car had sat for two weeks and the defendant had plenty of time to destroy the evidence and the police had plenty of time to get a warrant. This case is just like Carlton and Reed. The officers missed no opportunity to get a warrant, and if they could seize the car, they could search it. The only way the exigency dissipates is if they could seize the car, if the car was seized. And for these reasons, we hope this court will find that the district court did not clearly err, unless the court has further questions. Thank you. Ms. Merrick, you've saved time for rebuttal. Yes, Your Honor. Thank you. I'd like to begin by pointing out that I, too, was searching the record, and Officer Mills is the person who's testifying about Ms. Hurd at 513. A Chief Smith's testimony is on page 606 of the record, and he, at that point, says that I stood between them – this is after she comes around the trailer and said, don't interfere. She continued on, so I detained her. At that time, Officer Trent had Mr. Bean handcuffed. Trent is Officer Crook. Had him on his feet, carried him to one of the patrol cars. Ms. Hurd began to yell out again, start toward the officers. At that time, we handcuffed her. So that is Chief Smith's testimony. I'm sorry. I was assuming 513 was the Chief. Thank you. Challenge all assumptions. I was taking her word for that. I didn't go back in late. And the Chief's testimony is that she's handcuffed almost immediately after she comes around the trailer. Here again, the record is not clear because both of those people have differing opinions, but the Chief says he handcuffed her shortly after coming around the trailer. The district court had two opinions. First one, we reverse, then the second one, finding exigency. Correct. Did the first one have any indication as to exigency that's in tension with the second one, or are the two fully reconcilable? The first opinion had to do with the district court found it was a traffic stop. I know. But there were no findings of fact relevant to exigency. There were none, no. And this court remanded specifically for those factual findings. So I also would like to distinguish Reed and Carlton, which are the two cases that the judge relies upon. In Reed, that opinion written by the district court really relied primarily on the bank's beeper or transmitter that had been placed in with the money, had been in the car, and they were very concerned about whether another bank robbery would be committed and the beepers would interfere with each other. And that's what provided the exigency in that case, really not the fact that, and that is the one where the wife was in the car, and so in this case we do not have that. We don't even know that the gun is in the car. In that case, in Reed with the bank robbery, they knew that that radio transmitter was in the car and wanted to shut that down. Does it matter that the chief, as I went and looked at what you pointed out, I still am not real clear on the timing because they said they were starting to cuff her when she fainted and then they cuffed her after she fainted, but in any event, he kept saying she's not under arrest, she's just detained. She's detained. Does that make any difference? Because then once she stops agitating, they have to let her go. If she's not under arrest, they can't take her back to the station and put her in a cell like they can with Mr. Bean. They said they were detaining her because she was being agitated and whatever, and so given that, is she really secure for the period of time necessary to get the warrant? Because you can't just detain somebody forever if they're not under arrest. Well, at some point they handcuff her for resisting arrest and place her in the back. Yeah, but he's saying that's not arrest. He says that over and over again, that she's being detained because of being agitated. They're just trying to secure the scene, so to speak, but that she's not under arrest. That's what he's saying, and, I mean, I didn't go back and read the whole rest of it, but you pointed out those pages, and I just looked at them, and that's what he's saying at 6, 0, 9, or 10. He does say that, but she is not free to leave at that point if she's handcuffed. But, see, we're back to this issue of they've got all this time in the world to go get a warrant, and if she's just being detained, they can't keep her there for all the time in the world. Once the immediacy of her agitation is over, they have to let her go. Once they let her go, she can jump in the car, if the car isn't seized, and drive off with the gun. And I would agree with you except that our position is that we don't know that it's all the time in the world. It might have taken less time to get the warrant than it did to get the dog out and have the conversation and run the dog around the car because under Louisiana criminal procedure. But you're asking us to reverse a district court's fact-finding based on facts we don't have. And that's the government's fault because it's their burden of proof. Okay, it's their burden of proof before the district court, but now on appeal, you've got to point to evidence to show that what the district court concluded was wrong. We don't have that. I mean, you can't point to speculation of the warrant would have been quick because we can also speculate it would have been slow. And I'm saying we don't know because we don't have any facts in the record. And I can't create those facts in the record. The government should have presented those facts in this hearing as to how long it was going to take to get the warrant. If it would have taken a long time, we would be in a different set of circumstances. But we don't know how long it would take to get the warrant. But in today's world, those warrants come pretty quickly. Most of them are electronically. They're done by phone. We have at the point, and Judge Higginson is right, there are four officers. Ultimately, Claiborne Parish even shows up, and so we get to seven officers pretty quickly. We don't know when those Claiborne Parish officers arrived because they were not called to testify. So we don't know at what point exactly they arrive on the scene. We do know they're on the scene shortly after EMS and before the search of the trailer. Okay. Yep, you have a red light. Thank you so much. We appreciate the good arguments on both sides, and the matter is under submission.